# Sills Cummis & Gross
A Professional Corporation

The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102
Tel: (973) 643-7000
Fax (973) 643-6500

101 Park Avenue
28th Floor
New York, NY 10178
Tel: (212) 643-7000
Fax: (212) 643-6500

George R. Hirsch
Member
Admitted In MA, ME, NJ, NY
Direct Dial: (973)-643-5679
Email: ghirsch@sillscummis.com

600 College Road East
Princeton, NJ 08540
Tel: (609) 227-4600
Fax: (609) 227-4646

December 8, 2016

**VIA E-MAIL AND FEDERAL EXPRESS**

Honorable Michael B. Kaplan, U.S.B.J.
United States Bankruptcy Court
For the District of New Jersey
Clarkson S. Fisher U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

    Re:    **Dots, LLC, et al.**
             **Case No: 14-11016 (MBK)**

             **Dots, LLC, et al. vs. Milberg Factors, Inc.**
             **Adv. Pro. No: 14-1818 (MBK)**

             **Dots, LLC, et al vs. Finance One, Inc.**
             **Adv. Pro. No: 14-1826 (MBK)**

             **Request to "Rethink" Preliminary Summary Judgment Decision**

Dear Judge Kaplan:

      Please accept this letter as request that the Court "rethink" its position and its reasoning before converting its "preliminary decision" into a final decision and opinion.

      We believe that the Court's preliminary view that the Factors did not extend credit to the Debtors within the meaning of 11 U.S.C. §547(a)(2) and 11 U.S.C. §547(c)(4) (and therefore are not entitled to the benefit of new value) fails to consider various aspects of the record, may raise an issue of fact, is inconsistent with the economic reality, reflects an overly narrow interpretation of the statute, and is inconsistent with bankruptcy policy. A copy of the Transcript of the November 17, 2016 hearing is enclosed.

Sills Cummis & Gross
A Professional Corporation

Honorable Michael B. Kaplan, U.S.B.J.
December 8, 2016
Page 2

## Who Extended Credit To The Debtors

As discussed in the colloquy at the hearing, any sale of goods which is not paid before or on delivery involves an extension of credit. Even simple "net 30 days" terms are credit terms. The purchaser receives the goods and is given time to pay for them. This is credit. In the referenced adversary proceeding, the credit terms for each sale were EOM net 10.

The Court appears to have acknowledged that a sale of goods on terms includes an extension of credit. However, the Court appears to have understood the subject transactions as linear and following a sequence; i.e., the sale and shipment of goods by vendors to Debtors followed by the purchase by the Factors of invoices from the vendors. The Court referred to "the initial credit being given by the vendor to the debtor when it shipped the goods and didn't have immediate payment." Tr. 51:10-14. However, this is not correct. The vendors never extended any credit to the Debtors, never assumed any credit risk and would not have shipped the goods but for the fact that the Factors extended credit to the Debtors.

In viewing the transactions as linear and sequential, the Court appears to have not considered aspects of the record, including the following, establishing that the Factors (not the vendors) extended credit to the Debtors:

Declaration of Stephen Kim ¶ 7 (Emphasis added):

> Pursuant to the terms of the Factoring Agreement, **each of the factored vendors agreed that simultaneously with shipment, the invoices were assigned and Finance One always owned the invoices for the goods shipped to the Debtors. No credit was extended by the vendors to the Debtors; the credit was extended by Finance One**, and was without recourse to the vendors.

Milberg Factoring Agreement ¶2 (Exhibit B to Certification of Joseph Catalano) (Emphasis added):

> 2. The amounts and terms of each sale to our customers **shall be submitted to you for your credit approval in writing and no sales or deliveries shall be made without such written approval...**

Sills Cummis & Gross
A Professional Corporation

Honorable Michael B. Kaplan, U.S.B.J.
December 8, 2016
Page 3

Declaration of Maurice Sabony ¶ 15 (Emphasis added):

> **Because it is the retailers who owe the money to the factor, the factor determines how much credit it will extend to the retailer.**

Declaration of Maurice Sabony ¶ 19 (Emphasis added):

> In analyzing the Debtors' creditworthiness, I dealt directly with Elaine Kapusta, the Debtors' CFO. On average, I would speak with her every few months. I would obtain copies of the Debtors' financial statements, information on the Debtors' loans and gather all necessary information to obtain a picture of the Debtors' financial health. I obtained this information directly from the Debtors. Based upon my analysis of the foregoing, I would recommend an amount of credit for **Milberg to extend to the Debtors.**

Declaration of Maurice Sabony ¶ 26 (Emphasis added):

> As in a typical factoring situation, **Milberg credit-approved Debtors' orders and, simultaneously with their shipment, Milberg owned the invoices** for the goods shipped to the Debtor. **No credit was extended by the vendors to the Debtors; the credit was extended by Milberg, and was without recourse to the vendors.**

Declaration of Maurice Sabony ¶ 27:

> It was Milberg's credit approval (and extension of credit) that allowed goods to be released to the Debtors. To the extent the Debtors reached the established credit line and needed goods above the credit line, it was common for the Debtors, as other retailers, to free up credit by anticipating payments on invoices.

Declaration of Maurice Sabony ¶ 34 (Emphasis added):

> Milberg provided substantial new value to Debtors in the form of extension of credit, thereby allowing the shipment of goods to Debtors. Milberg interacted directly with Debtors concerning order approvals and payment, usually with Ms. Kapusta. **It was**

Sills Cummis & Gross
A Professional Corporation

Honorable Michael B. Kaplan, U.S.B.J.
December 8, 2016
Page 4

> only upon Milberg's credit approval and extension of credit that goods would be released to the Debtors. Thus, it was Milberg that extended new value to Debtors in the form of the extension of credit.

Collection Date Factoring Agreement (Exhibit A to Certification of Joseph Catalano) (Emphasis added):

The Factor's credit approval (i.e., credit for the Debtors) was required prior to each sale, and the entire credit risk belonged to the Factors simultaneously with the sale. The vendors extended no credit to the Debtors - only the Factors did.[1] Moreover, under the Factoring Agreements, the assignments of the accounts transferred to the Factor all the vendor's rights with respect to the goods, including but not limited to right of stoppage in transit and replevin.

Thus, the record is clear that the Factors, not the vendors, extended credit to the Debtors, and the Debtors have not submitted any evidence to the contrary. Instead, Exhibit E to the Catalano Certification makes repeated reference to the discussions that the Debtors had directly with the factoring community and repeatedly references the Debtors attempts to increase "our" (the Debtors) credit lines.

There is no evidence whatsoever before the Court to support the conclusion that the vendors ever extended any credit to Debtors. That the vendors did not extend credit to the Debtors, but rather the Factors did so, will be further demonstrated at trial by testimony, which may include testimony of representatives of the Factors, of the vendors and of former officers of the Debtors. There may also be expert testimony that the economic reality is that the Debtors received credit from the Factors, and received no credit from the vendors. In the event the Court on rethinking still believes it possible that the transactions included an initial extension of credit by the vendors to the Debtors and a subsequent assignment of that credit to the Factors, then there is a factual issue on that point, as the evidence of record is to the contrary. We believe that the Court is simply incorrect, and that there is no factual issue, but in any event the record does not support a summary judgment finding that the vendors extended credit to Debtors followed by the Factors' acquisition of the credit relationship. Instead, the record establishes that the Factors extended credit to the Debtors, and, without that credit from the Factors, the Debtors would not have received the goods.

---

[1] An extension of credit does not require a written agreement with the entity receiving the credit.

Sills Cummis & Gross
A Professional Corporation

Honorable Michael B. Kaplan, U.S.B.J.
December 8, 2016
Page 5

### Viewing The Transactions As A Whole, The Factors Gave New Value

Separately, we believe that the Court's application of the statute is too narrow. Even if there could be an ultimate factual determination that the Factors did not extend credit to the Debtors (a proposition we reject), new value was also given by the Factors because they made possible the shipment of goods to the Debtors. 11 U.S.C. §547(c)(4) includes new value given "to or for the benefit of the debtor." The Factors gave new value "to or for the benefit of the debtor" regardless of how the transaction is viewed. Without the credit lines established by the Factors, the vendors would not have shipped goods, and the Debtors would not have been able to purchase the goods. That the vendors and the Factors also benefitted from the transactions does not mean that the Debtors did not benefit. Moreover, to our understanding, intent is not an element of a new value analysis. The question is "was there new value?" not "why did the creditor give new value?"

Courts, including the Court of Appeals for this Circuit, have recognized that in three party transactions, the third party may receive the benefit of the new value defense (albeit in the 11 U.S.C. §547(c)(1) context), where the new value was given "for the benefit of the debtor." Thus, in *In re Kumar Bavishi & Associates*, 906 F.2d 942 (3rd Cir. 1990), the Third Circuit rejected the trustee's attempt to preclude a guarantor of a corporate debt from receiving new value credit, stating: "The argument fails to recognize the brute fact of financial life in this transaction, to wit, Salween would not have lent the money to the debtor had appellee not provided a personal guarantee. The debtor was in a better position after the transaction because it had increased cash-flow." *Id.* at 945. *See also In re Jones Truck Lines, Inc.*, 130 F.3d 323 at 327 (8th Cir. 1997) (focusing on the phrase "for the benefit of").

In the determining on a preliminary basis that the Factors did not give new value to the Debtors, this Court relied upon the reasoning of the vacated case of *Country Junction, Inc. v. Money Exchange (In re Country Junction)*, 49 B.R. 708 (Bankr. W.D. Texas 1985), vacated pursuant to settlement, *Matter of Country Junction, Inc.*, 1987 U.S. App. LEXIS 18331 (5th Cir. 1987). We have attached hereto a copy of an unreported decision rendered some thirteen years after *Country Junction*, which is factually analogous to the case at bar, distinguishing and declining to follow the reasoning of *Country Junction*, and finding that the factor was entitled to the new value defense, because it extended credit, stands in the shoes of the vendor as well as because of the three party transaction doctrine. *UE Trustee Corporation v. UNIFI, Inc. (In re UE Liquidating Corporation)*, Adv. 96-00108 (Bankr. W.D. Va. February 24, 1998). The court in *UE Liquidating* explained that:

> At all times at issue, although United Elastic placed all orders for material directly with Unifi, United Elastic knew that Unifi's invoices were to be factored by First Factors, and whenever it was necessary to discuss credit terms and timing of payments, United

Sills Cummis & Gross
A Professional Corporation

Honorable Michael B. Kaplan, U.S.B.J.
December 8, 2016
Page 6

> Elastic discussed such issues with First Factors. During the preference period, United Elastic paid to First Factors $1,225,082.52 on account of Unifi's accounts receivable. If Unifi had not been able to factor the invoices, i.e., if First Factors had not approved the invoices and thereby accepted the risk of nonpayment on such invoices, Unifi would not have shipped the goods described in such invoices to United Electric."

This is precisely what has occurred between the Factors and the Debtors at bar.

*In re UE Liquidating* also discussed two policy considerations relevant to the issue of whether a factor is entitled to the new value defense, quoting *Matter of Toyota of Jefferson, Inc.*, 14 F.3d 1088 at 1091 (5th Cir. 1994):

> first, without the exception, a creditor who continues to extend credit to the debtor, perhaps in implicit reliance on prior payments, would merely be increasing his bankruptcy loss . . .second, the limited protection provided by the subsequent advance rule encourages creditors to continue their revolving credit arrangements with financially troubled debtors, potentially helping the debtor avoid bankruptcy all together.

Finally, the *UE Liquidating*, court confirmed that:

> it is the purpose of 11 U.S.C. §547(c)(4) to encourage creditors to continue to transact business with financially troubled companies. In this case, First Factors, by factoring the invoices and accepting the credit risk on these transactions, has done just that. To thwart First Factors' ability to assert the new value defense in this instance would be to thwart the very type of transaction that this statutory section was meant to protect, transactions which encourage creditors to continue to provide new value to troubled businesses.

These policy considerations are significant, and their significance will be confirmed at trial. The retail industry, which faces significant challenges, relies on the availability of goods from vendors. Indeed, the Debtors' "wind-down officer," Joseph Catalano, has acknowledged that the Debtors relied upon credit support from factors for almost 70% of their purchases. Certification of Joseph Catalano at ¶12. To suggest that entities who provide credit support which enables a distressed retailer to obtain much needed product are not entitled to the same protection as any other supplier of goods or credit is inconsistent with the Bankruptcy Code and the realities of retail commerce. The impact of such a ruling goes far beyond this case and could

# Sills Cummis & Gross
A Professional Corporation

Honorable Michael B. Kaplan, U.S.B.J.
December 8, 2016
Page 7

impair the ability of troubled retailers to continue to do business, as it would likely cause the entire factoring industry to be significantly less willing to extend credit to those retailers. Respectfully, this is not what Congress had in mind when it sought by the new value provision to encourage support for financially distressed companies.

Finally, denying new value credit to the Factors under these circumstances would bestow an inequitable windfall on the bankruptcy estate and, in this case, even more so a windfall to the secured creditor. This inequity results from allowing the estate and the secured creditor to receive the benefit of two separate extensions of credit for two separate shipments of goods, neither of which end up being paid. Stated differently, as to each item of new value denied to the preference creditor, the Debtors receive two shipments of goods, but end up paying for neither (because of preference voidability). Conversely, the Factors would be out both the initial transaction amounts and the value of the subsequent transaction, for which they would be denied new value credit.

## Conclusion

Accordingly, we respectfully request that the Court rethink its preliminary decision, taking into account the matters set forth above. We believe that after doing so, the Court should either (i) find that the Factors extended new value to the Debtors within the meaning of 11 U.S.C. §547(a)(2) and 11 U.S.C. §547(c)(4), or (ii) find that there is a factual issue for trial as to whether the Factors extended credit to the debtor.[2]

Respectfully,

George R. Hirsch

GRH/djz
Enclosure
cc:     Joseph J. DiPasquale, Esq. (Via E-Mail and FedEx w/ Encl.)
        Joshua H. Raymond, Esq. (Via E-Mail and FedEx w/ Encl.)
        Michael B. Goldsmith, Esq. (Via E-Mail w/ Encl.)
        Lori Sapir, Esq. (Via E-Mail w/ Encl.)

---

[2] We are cognizant of the unique procedural position of the Court's preliminary ruling. It arose out of an unusual briefing structure, and involved many arguments by the Debtors based on "gotchas" rather than addressing the merits of the issues presented. We hope that in responding to this letter, Debtors' counsel will address the legal issues and refrain from the type of attacks which have permeated their papers in the past.